THE STATE OF OHIO, APPELLEE, *v.* TALBERT, APPELLANT.

(No. 13-85-23—Decided
September 2, 1986.)

*Richard A. Grafmiller,* prosecuting attorney, for appellee.
*John J. Callahan,* for appellant.

HANDWORK, P.J. This case is before the court on appeal from a judgment entered by the Tiffin Municipal Court.

In August 1984, Bonford R. Talbert, Jr., was retained as legal counsel to represent Chester Matthews in an eviction action. On September 12, 1984, in preparing the defense for the case, Talbert went to visit Jesse Alspach, the rental manager of the complex in which Matthews lived. Alspach invited Talbert into her apartment where they discussed the Matthews case for about twenty minutes. Then, as Talbert rose to leave Alspach's apartment, he allegedly kissed her and tried to place his hand on her breast. Alspach pushed his hand away and said, "I don't do those things." At that moment a neighbor knocked on the door. When Alspach answered the door and admitted the neighbor, Talbert left the apartment.

The following morning Alspach notified the Tiffin police department about the incident. In an attempt to obtain corroborating evidence prior to filing charges,[1] the police arranged to record a telephone conversation between Alspach and Talbert. Although the conversation related primarily to the Matthews case, there were two very brief mentions of the alleged incident between Alspach and Talbert. Following this conversation, a complaint was filed against Talbert charging him with sexual imposition.

Talbert's pretrial motion *in limine* to prevent the admission of the recording as evidence and his motion for a change of venue were both denied. Thereafter, the case was tried to a jury; Talbert was found guilty and sentenced accordingly. This appeal follows with appellant Bonford Talbert setting forth as his six assignments of error:

"1. The trial court erred in denying the defendant the right to cross-examine the alleged victim of the offense in the presence of the jury with reference to prior inconsistent statements.

"2. The trial court erred in failing to declare a mistrial when the alleged victim of the offense testified that the defendant 'would pay anybody off to do anything for him in court.'

"3. The trial court erred in denying the defendant's motion for a mistrial when the alleged victim of the offense testified that the defendant had previously molested other women and that she had read about the incident in the newspaper.

"4. The trial court erred in overruling the defendant's motion *in limine* and admitting into evidence a recording of a telephone conversation between the defendant and the alleged victim of the offense.

"5. The trial court erred in overruling the defendant's motion for a change of venue.

---

[1] R.C. 2907.06 (sexual imposition) provides in relevant part that:

"(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following apply:

"* * *

"(B) No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence."

"6. The trial court erred in overruling the defendant's motion for judgment of acquittal."

In appellant's first assignment of error, he argues that the trial court improperly denied him an opportunity to present evidence of a prior inconsistent statement that Jesse Alspach, the alleged victim, made to Matthews, the client whom Talbert represented. Alspach had been called as the state's first witness. Upon cross-examination, defense counsel asked, ostensibly to attack her credibility, if she recalled saying to Matthews that she had told Matthews that she had "Talbert's ass nailed" or that "He [Talbert] will never put his hands on another woman." When Alspach denied having made these statements, defense counsel requested a tape recorder to play back, in front of the witness and the jury, a recording of a telephone conversation between Alspach and Matthews wherein Alspach made the alleged statements. The court, however, denied his request stating that the tape was "not the best evidence, even if relevant."

The next morning in chambers the court reconsidered its ruling on the request for a recorder. It was the court's opinion, however, that Alspach must be given the opportunity to listen to the recording *outside* the presence of the jury rather than in open court. If Alspach then admitted making the alleged statements, defense counsel would be permitted to cross-examine her on the limited issue of those specific statements. The tape was then played for her and she admitted making those statements.

Appellant argues in support of his assignment of error that Evid. R. 613 permits the introduction of the prior inconsistent statements of a witness in open court. Evid. R. 613 provides, in pertinent part:

"(A) Examining witness concerning prior statement. In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(B) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(D)(2)."

Under paragraph (A) of Evid. R. 613, counsel is not required to show the prior statement or disclose its contents to the witness at the time he is interrogating the witness. Opposing counsel, however, is entitled to see the statement or be made aware of its contents if he so requests. Paragraph (B) of this same rule establishes two conditions for admissibility of extrinsic evidence of prior inconsistent statements: first, a proper foundation must be laid for the introduction of the evidence indicating the time, place, and person involved in the supposed contradictory statements. See *State* v. *Osborne* (1977), 50 Ohio St. 2d 211, 217-218, 4 O.O. 3d 406, 410, 364 N.E. 2d 216, 221. Second, counsel for the opposing party must also be afforded an opportunity to question the witness about the statement. Upon meeting both of these prerequisites, it is commonly held that a witness's prior inconsistent statements may be used for the purposes of impeaching his credibility.

In this case, defense counsel offered Alspach an opportunity to ex-

plain or deny her prior statements made during the recorded phone conversation with Matthews. He further indicated when the conversation was had and under what conditions. Accordingly, it is our conclusion that counsel established the appropriate foundation for the introduction of the statements pursuant to Evid. R. 613. The issue is now more clearly delineated as to whether the tape should have been played in open court or merely presented before the witness in chambers. We conclude that the tape should have been played in open court.

Pursuant to the Confrontation Clause of the Sixth Amendment to the United States Constitution, every individual accused of a crime must be provided the opportunity to cross-examine the witnesses and to provide an occasion for the jury to weigh the demeanor of that witness. See *Barber* v. *Page* (1968), 390 U.S. 719. Indeed, to be denied the right of effective cross-examination constitutes a "constitutional error of the first magnitude and no amount of showing of want of prejudice [will] cure it." *Brookhart* v. *Janis* (1966), 384 U.S. 1, 36 O.O. 2d 141; *Smith* v. *Illinois* (1968), 390 U.S. 129. In light of the importance of these provisions, we find that Talbert must be afforded an opportunity to challenge the credibility of the chief complaining witness against him. See *Brown* v. *United States* (1958), 356 U.S. 148, 154-155. And if her testimony and credibility is to be attacked through the device of prior inconsistent statements under Evid. R. 613, the reaction of that witness when confronted with the contrary statements must be seen by the jury. Playing the recording for the witness in the relative privacy of chambers serves only to eliminate this key factor. See *United States* v. *Bohle* (C.A. 7, 1971), 445 F. 2d 54. Ultimately, because Alspach's statements, as recorded, appear independently admissible as prior inconsistent statements pursuant to Evid. R. 613, particularly in view of the fact that defense counsel appears to have laid the requisite foundation, it is our determination that the tape recording should have been played in open court. Accordingly, we find appellant's first assignment of error to be well-taken.

Appellant argues in his conjunctive second and third assignments of error that a mistrial should have been granted because of certain allegedly unfair inflammatory and prejudicial remarks made by Alspach while on the witness stand. The statements of which appellant complains include a charge by Alspach that Talbert "would pay anybody off to do anything for him in court" and that Talbert had previously molested other women and that she, Alspach, had read about these molestations in the newspaper. Although defense counsel failed to object to the first statement, the court found the remarks so inflammatory that he stopped the proceedings to admonish the jury to disregard the remarks. When counsel objected to the latter statements and moved for a mistrial, the court felt compelled to poll the jury to determine if they could ignore the statements when considering the merits of the case. All of the jurors asserted that they could and the motion was denied.

In Ohio, a mistrial can be granted where the impartiality of one or more of the jurors may have been affected by an improper comment. *State* v. *Abboud* (1983), 13 Ohio App. 3d 62, 62-63, 13 OBR 66, 67, 468 N.E. 2d 155, 156. Furthermore, a trial court is vested with the authority to determine this issue in the exercise of its sound discretion. See *Abboud, supra;* see, also, *United States* v. *Perez* (1824), 22 U.S. (9 Wheat.) 579, 580; and *Wade* v. *Hunter* (1949), 336 U.S. 684, 689.

To be sure, a trial court's decision in ruling on a motion for mistrial is to be granted deference. Nonetheless, even though a mistrial might not be "necessary" following misconduct, the granting of a mistrial under the circumstances in this case proves to be the only alternative to meet the ends of justice. Although each and every juror responded following the unfortunate remarks that he or she could ignore the inflammatory nature of the statements, the likelihood of obtaining an impartial jury seems highly unlikely. The fact remains that a former municipal court judge from their own city, one well associated with the inner workings of the very court in which he was on trial, had been accused of being able to obtain a favorable verdict through bribery. While we do not mean to suggest that this appellant be granted special consideration, the trial of a former official under these circumstances is inherently fraught with the possibility of error. Whereas the nature of the statements complained of would be severe in *any* case, the prejudicial implication is clearly heightened in this case. Ultimately, if the public is to have the security in the faithful, sound, and conscientious exercise of justice within the judicial system, all parties must have the promise of a trial free of the unwarranted taint of partiality among the jurors. Absent such a promise, the accused is denied a valued right and the public's interest in fair trials may be subordinated.

Finally, we pause to address the state's argument that by failing to object to Alspach's accusations that appellant would "pay off" or bribe individuals to obtain a favorable result he waived that error. Although it is a well-recognized precept of appellate procedure that a party must object in a timely fashion to preserve an alleged error upon appeal, see *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 117, 5 O.O. 3d 98, 101, 364 N.E. 2d 1364, 1367, and *State* v. *Abrams* (1974), 39 Ohio St. 2d 53, 68 O.O. 2d 30, 313 N.E. 2d 823, we note that the Supreme Court of Ohio has promulgated an exception to the above rule. In *State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804, the court set forth the "plain error doctrine" which permits the correction of judicial proceedings, even absent proper objection, when an error is clearly apparent on the face of the record and this error is prejudicial to the appellant. See, also, *State* v. *Eiding* (1978), 57 Ohio App. 2d 111, 11 O.O. 3d 113, 385 N.E. 2d 1332. Importantly, we recognize that implementation of the plain error doctrine is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. We find this case to be one of those rare instances.

In this case, we are clearly confronted with exceptional circumstances: a former municipal court judge is on trial within his own former jurisdiction; he is accused of a crime which requires supportive corroborative evidence in addition to the complainant's testimony or else a conviction cannot stand (see R.C. 2907.06[B]); further, although further evidence of this nature is available, to wit, a taped telephone conversation between the complainant and appellant, we find that this evidence is not of sufficiently compelling import, standing alone, to give rise to a conclusion beyond a reasonable doubt that appellant committed the crime of which he was on trial. These factors are now overlaid with the accusation that appellant could possibly "buy" his acquittal. Although the ramifications of such a charge may indeed be negated and the implication nullified, the possibility of injustice looms too large to dismiss the error as

harmless because appellant failed to object. Accordingly, based on the foregoing rationale, we find appellant's second and third assignments of error to be well-taken.

Appellant argues in his fourth assignment of error that the trial court erred in denying appellant's motion *in limine* and, thereby, admitting into evidence a recording of a telephone conversation between appellant and Alspach, the alleged victim of this offense. As previously noted, Alspach telephoned Talbert in an effort, initiated by the police department, to obtain corroborative evidence of the alleged crime. During the conversation, Talbert made two responses to Alspach's questions which may have been construed as relating to the charge:

"MRS. ALSPACH: Okay, Okay. Now, ah, by the way, the other reason I called was, ah, yesterday in my apartment I didn't appreciate you kissing my [*sic*] or holding me or trying to reach my breasts.

"MR. TALBERT: Well, let's forget all about that. It's ah, forgotten, okay.

"* * *

"MRS. ALSPACH: So, that's about all I can tell you for right not [*sic*] but I just wanted to clear it up about yesterday. I'm not that type of person.

"MR. TALBERT: I didn't think you were."

It is these statements that appellant seeks to have omitted on the ground that they do not tend to corroborate the testimony of Alspach. We disagree with this assertion.

Under Ohio law, for evidence to be considered corroborative, it must: (1) tend to prove some of the material facts of the crime charged, and (2) tend to connect the defendant with the crime. See, *e.g.*, *State* v. *Robinson* (1910), 83 Ohio St. 136, 93 N.E. 623;

*State* v. *Maranda* (1916), 94 Ohio St. 364, 114 N.E. 1038. See, also, *State* v. *Flonnory* (1972), 31 Ohio St. 2d 124, 60 O.O. 2d 95, 285 N.E. 2d 726. Upon review, while we must concede that the statements are not a direct admission of any wrongdoing, they could be construed as tending to lend some credence to Alspach's accusations. Likewise, they tend to at least connect appellant with the alleged crime. Because of these considerations, it is impossible for this court to rule that the lower court must exclude such evidence as irrelevant or uncorroborative inasmuch as its probative value is not substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury. See Evid. R. 403(A). Accordingly, appellant's fourth assignment of error is hereby found not well-taken.

In appellant's fifth assignment of error he argues that the trial court erred in overruling his motion for a change of venue. In essence, appellant argues that the case received so much adverse pretrial publicity that an impartial jury could not be obtained within the Tiffin community.

Crim. R. 18(B) provides that a change of venue may be granted "when it appears that a fair and impartial trial cannot be held in the trial court in which the action is pending." Importantly, the right to order a change of venue lies within the sound discretion of the trial court. *State* v. *Richards* (1932), 43 Ohio App. 212, 183 N.E. 36. See, also, *State* v. *Sheppard* (1956), 165 Ohio St. 293, 59 O.O. 398, 135 N.E. 2d 340. We also note that the burden is on the appellant to show the trial court that a fair and impartial jury trial could not be held in the Tiffin Municipal Court. In this case appellant alleged below merely that "there is a reasonable likelihood that the publicity given this case will prejudice defendant's right to a fair trial in this

court." In support of this allegation, appellant has introduced into evidence numerous newspaper clippings from the local newspaper that report in chronological order the events that occurred in this case. Upon review of these exhibits, we must concur with the trial court that this does not constitute a sufficient basis on which to grant a motion for a change of venue. See *Irvin* v. *Dowd* (1961), 366 U.S. 717. There has been no showing whatsoever of any likelihood that defendant would not receive a fair and impartial trial as required. Accordingly, we conclude that the trial court has not abused its discretion in denying appellant's motion. Accordingly, appellant's fifth assignment of error is hereby found not well-taken.

In appellant's sixth assignment of error he argues that the state failed to adduce sufficient evidence on which to convict appellant of the crime of sexual imposition; accordingly, he contends that the trial court erred in overruling his motion for acquittal pursuant to Crim. R. 29(A).

Crim. R. 29(A) provides, in pertinent part, that the trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense * * *." Upon review of the record in this case, we find that the direct testimony of Alspach, the alleged victim, and as corroborated by the telephone conversation between herself and appellant, constitutes sufficient evidence on which reasonable minds could find that appellant was guilty of the crime charged. *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132. Accordingly, we hereby find appellant's sixth assignment of error not well-taken.

In conclusion, having found appellant's first, second, and third assignments of error to be well-taken, and appellant's fourth, fifth, and sixth assignments of error to be not well-taken, it is our finding that substantial justice has not been done the party complaining. Accordingly, the judgment of the Tiffin Municipal Court is hereby reversed. This case is remanded to said court for proceedings not inconsistent with this decision.

*Judgment reversed*
*and cause remanded.*

RESNICK and WILKOWSKI, JJ., concur.

HANDWORK, P.J., ALICE ROBIE RESNICK and WILKOWSKI, JJ., of the Sixth Appellate District, sitting by assignment in the Third Appellate District.